# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>WB MAINTENANCE INC. dba<br>WB MAINTENANCE & REPAIR *et. al*.,<br><br>                  Debtors.[1] | Chapter 11<br>Subchapter V<br><br>Case No. 1-22-41755-JMM<br><br>(Jointly Administered) |

## DEBTORS' JOINT PLAN OF REORGANIZATION

KOUTSOUDAKIS & IAKOVOU LAW GROUP PLLC
*Counsel for WB Maintenance Inc., et. al, Debtors and Debtors in Possession*
40 Wall Street, 49th floor
New York, New York 10005
Main:  (212) 404-8644
Direct: (212) 404-8608
Email: ralph@kilegal.com
Ralph E. Preite, Esq.

October 19, 2022

---

[1] The Debtors in these chapter 11 cases, along with their respective case numbers and the last four digits of each Debtor's employer identification number are: WB Maintenance Inc., Case No. 1-22-41755 (2958); Go-Pro Maintenance Inc., Case No. 1-22-41756 (4160); W.B. Maintenance & Repair Corp., Case No. 1-22-41757 (1003); W.B. & Son Construction Corp., Case No. 1-22-41758 (6909); and W.B. Maintenance & Design Group Inc., Case No. 1-22-41759 (7375).

**JOINT PLAN OF REORGANIZATION OF:**

| | |
|---|---|
| WB Maintenance Inc. dba WB Maintenance & Repair, | Case No. 1-22-41755-JMM |
| Go-Pro Maintenance Inc., | Case No. 1-22-41756-JMM |
| W.B. Maintenance & Repair Corp., | Case No. 1-22-41757-JMM |
| W.B. & Son Construction Corp., and | Case No. 1-22-41758-JMM |
| W.B. Maintenance & Design Group Inc., | Case No. 1-22-41759-JMM |
| | (Jointly Administered) |

## BACKGROUND FOR CASE FILED UNDER SUBCHAPTER V

### A. Description and History of the Business of the Debtors

WB Maintenance Inc., Go-Pro Maintenance Inc., W.B. Maintenance & Repair Corp., W.B. & Son Construction Corp., and WB Maintenance & Design Group, Inc., the above-captioned debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases ("Chapter 11 Cases") filed in this District on July 22, 2022 under subchapter V of Chapter 11 of the United States Code, 11 U.S.C. §101, *et seq.* ("Bankruptcy Code") are privately held corporations organized under the laws of the State of New York. The five Debtors are general construction companies, three[2] of which exist in New York, and two of which were New York corporations that were dissolved in or prior to 2018 as set forth in the following table:

| Debtor | Case No. | Formed or Dissolved | Status |
|---|---|---|---|
| WB Maintenance Inc. | 22-41755-JMM | formed 12/5/2017 | inactive |
| Go-Pro Maintenance Inc. | 22-41756-JMM | formed 2/10/2020 | operational |
| W.B. Maintenance & Repair Corp. | 22-41757-JMM | formed 4/24/2014 | operational |
| W.B. & Son Construction Corp | 22-41758-JMM | dissolved 6/29/2016 | defunct |
| WB Maintenance & Design Group Inc. | 22-41759-JMM | dissolved 11/2/2018 | defunct |

The Debtors hereby jointly propose the following joint plan of reorganization (the "Plan") under § 1189 of the Bankruptcy Code for the resolution of all outstanding Claims against, and Interests in, the Debtors. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against, and Interests in, such Debtors. As required under the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided under the Bankruptcy Code. The Plan states whether each class of claims or interests in impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

On or about December 2021, a lawsuit was commenced against two (2) of the five Debtors and their individual proprietors by twelve (12) allegedly former employees alleging they are owed unpaid wages. The two dissolved Debtors are the corporate defendants named in the case, which is entitled Byron Geovanny Arevalo Fajardo, Carlos Martell, Jose Gutierrez, Juan Pereyra, Iñigo Mendoza Ramirez (a/k/a Eduardo Mendoza Ramirez), Miguel Garrido, Reymundo Chavez Hernandez (a/k/a Ramon Chavez Hernandez), Richard Xavier Hernandez, And Sebastian Alfredo Espinosa Vargas (a/k/a Sebby Espinosa

---

[2] The three existing non-dissolved debtors are, WB Maintenance Inc. formed 12/5/2017, Go-Pro Maintenance Inc., formed: 2/10/2020, and W.B. Maintenance & Repair Corp. formed: 4/24/2014.

Vargas), Jairo Rivas, Elias Ordones, and George Palta, plaintiffs ("Plaintiffs"), on the one hand, and defendants WB Maintenance & Design Group, Inc., debtor in possession, W.B. & Son Construction Corp., debtor in possession , Wladimir Briceno, Betty Briceno, Jeissy Briceno, Jeimy Briceno, and Alexander Briceno ("Defendants") pending in the United States District Court, Eastern District of New York bearing index no: 1:21-cv-5263 (SJB) (hereinafter, the "FLSA Suit"). The Debtors filed these Chapter 11 Cases to manage the liabilities alleged in the FLSA Suit.

## B. Liquidations Analysis

To confirm the Plan, the Bankruptcy Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit A**. The liquidation analysis provides for a nominal distribution to general unsecured creditors under a liquidation as provided for in the Debtors' liquidation analysis. Regardless, the Debtors propose to pay 100% to allowed creditors claims.

## C. Ability to make future plan payments and operate without further reorganization

The Debtors must also show that they will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtors' business.

The Debtors has provided projected financial information for the six (6) months following the date on which the Debtors instituted this subchapter V, chapter 11 bankruptcy proceeding, July 22, 2022 (the "Petition Date") for the Plan as Exhibit B.

The Debtors' financial projections show that jointly they will have approximately $337,000 to make the initial Plan payment on the Effective Date, and at least $12,000 per month of monthly projected disposable income (as defined by § 1191(d)(2) of the Bankruptcy Code) for each year of the period described in § 1191(c)(2) to make monthly Plan payments of approximately $12,000 in year 1 and 2, to pay all allowed claims in full over time.

The final Plan payment is expected to be paid in approximately June 2024.

## Article 1: Summary

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtors, i.e., WB Maintenance Inc., Go-Pro Maintenance Inc., W.B. Maintenance & Repair Corp., W.B. & Son Construction Corp., and W.B. Maintenance & Design Group Inc.  from revenues from future operations of the debtors Go-Pro Maintenance Inc., W.B. Maintenance & Repair Corp. and also potentially from the loan proceeds of financings the companies may obtain.

This Plan provides for:      1 class of priority claims.
                                     2 classes of non-priority unsecured claims (wage, trade).
                                       1 class of equity security holders.

Priority claims comprising of taxes owed to the NYS Department of Taxation and Finance will be paid on the Effective Date. The Debtor W.B. Maintenance & Repair Corp. is current on its monthly lease payments to its landlord Core Empire Corp. Non-priority unsecured creditors which are trade creditors or suppliers holding allowed claims will be paid in full over a 12-month period without interest under the Plan.

Non-priority unsecured creditors holding Wage and Hour Claims will be paid in full over 20

months commencing thirty (30) days after he Effective Date of the Plan, with a $350,000 down payment paid upon the Effective Date, and the defendants in the FLSA Suit will be discharged and released per agreement, all and provided pursuant to the parties' settlement agreement (the "Settlement Agreement").

This Plan also provides for the payment of administrative and priority claims in full, and *as agreed*. The NYS Department of Taxation & Finance claim will be paid in full on the Effective Date.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. If you do not have an attorney, you may wish to consult with one.**

**Article 2:**     **Classification of Claims and Interests**

2.01          **Class 1**          All allowed claims entitled to priority under § 507(a) of the Bankruptcy Code (except administrative expense claims under § 507(a)(2)). The sole claim in this class is the $5,139.11 priority claim filed by the NYSDT&F.

2.02          **Class 2**          The allowed claims under § 502 of the Bankruptcy Code of all former and/or current employees who hold non-priority unsecured Pre-Petition claims for unpaid wages and/or related violations including claims arising under 29 U.S.C. § 201, *et seq*. (the "Fair Labor Standards Act of 1938") and/or 28 U.S. Code § 1367 and/or Chapter 31 of the Consolidated Laws of New York (McKinney's) (the "New York Labor Law") including Articles 6 and 19 of the New York Labor Law and/or the New York Human Rights Law, and/or the New York City Human Rights Law, and/or industry specific wage orders and/or the claims in the FLSA Suit (collectively the "Wage and Hour Claims"). The claimants in this class are the 12 individuals named as plaintiffs in the FLSA Suit. The claims asserted in the FLSA Suit have been reduced to the sum of $530,000.00 Settlement Amount, pursuant to the terms of the Settlement Agreement.

2.03          **Class 3**          All non-priority unsecured claims allowed under § 502 of the Bankruptcy Code, except such claims as are specifically designated in Class 3.

2.04          **Class 4**          Equity interests of the Debtors.

Article 3:     <u>Treatment of Administrative Expense Claims, Priority Tax Claims, and Court Fees</u>

| | | |
|---|---|---|
| 3.01 | **Unclassified Claims** | Under § 1123(a)(1), administrative expense claims, are not classified. |
| 3.02 | **Administrative Expense Claims** | Each holder of an administrative expense claim allowed under § 503 of the Bankruptcy Code (except for Professional Fees and for administrative expense claims that arise during this Case in the ordinary course of business) will be paid upon the later of (i) the Effective Date of this Plan, (ii) within 30 days of an administrative expense claim under § 503 of the Bankruptcy Code becoming a final, non-appealable allowed claim, or (iii) *upon such other terms as may be agreed upon by the holder of the allowed claim and the Debtors.* |

All claims for administrative expense status under § 503 of the Bankruptcy Code (except for Professional Fees and administrative expense claims that arise during this Case in the ordinary course of business) must be filed and served on the Debtors and the U.S. Trustee within 30 days of the Effective Date or such creditor shall be forever barred, from asserting such claim for administrative expense status against the Debtors or their property. Objections to such requests, if any, must be filed and served on the Debtors and the requesting party no later than 30 days after the filing of the request for administrative expense status.

Administrative expenses that arise during this Case in the ordinary course of the Debtors' business shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions without the need for filing a claim for administrative expense status.

Entities with claims for Professional Fees, including fees of the Subchapter V Trustee and counsel for the Debtors, for services rendered before the **Effective Date** must file and serve on the Debtors as well as the U.S. Trustee, and such other persons who are designated by the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, an application for final allowance of such Claim for accrued Professional Fees no later than 45 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and Local Rules, the allowed amounts of such Professional Fees shall be determined by the Bankruptcy Court. The allowed Professional Fees shall be paid in the following minimum amounts unless other terms are agreed upon by the holder of the claim and the Debtors:

(1)  $15,000.00 to the Subchapter V Trustee, and $25,000.00 to GJM Business Center, Inc., financial advisors for the Debtors, within 21 days of entry of a final fee applications and plan confirmation; and

(2) $95,000.00 to counsel for the Debtors for its chapter 11 legal fee, less any interim awards of compensation made during the pendency of this case, in monthly installments if necessary after the payments in section 3.02(1) above are made.

Upon the Effective Date, any requirement that professionals comply with section 327 through 331 and 1103 of the Bankruptcy Code in seeking approval from the Bankruptcy Court of retention and compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without further notice to any party or action, or order or approval of the Bankruptcy Court.

3.03  **Priority Tax Claims**   There is a priority tax claim in the sum of $5,109.31 owed to the New York State Department of Taxation and Finance by W.B. Maintenance & Repair Corp.

---

3.04  **Statutory Fees**   All fees, if any, required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of this Plan have been paid or will be paid on the Effective Date. The Debtors do not owe any such fees. Filing fees have been paid in full, and no quarterly fee are owed to the United States Trustee as this is a case under Subchapter V of Chapter 11.

## Article 4: Treatment of Claims and Interests Under the Plan

**4.01   Claims and interests shall be treated as follows under this Plan:**

| Class | Est. Claims | Impaired/ Unimpaired | Treatment |
|---|---|---|---|
| Class 1 – Priority claims excluding those in Article 3 | $5,109.31 | Impaired | Class 1 is impaired by the Plan, and each holder of a Class 1 Priority Claim will be paid ***ONE HUNDRED percent (100%)*** of the allowed amount of such creditor's claim in one (1) installment on the Effective Date of this Plan. The New York State Department of Taxation and Finance is the sole creditor in Class 1 and filed claim no. 1 in this Case in the amount of $5,109.31. |

| Class 2 – Non-Priority Unsecured creditors (Wage and Hour Claims) | $530,000.00 or as may otherwise be allowed. | Impaired | Class 3 is impaired by the Plan. In full satisfaction of the claims in Class 3, this class will be paid $530,000.00 (the "Settlement Amount") in installments.  The first payment will be one lump-sum down payment in the amount of $350,000.00 paid on the Effective Date and after U.S. District Court and U.S. Bankruptcy Court approval of the Settlement Agreement. The balance of the Settlement Amount shall be paid thereafter in eighteen (18) consecutive monthly installment payments of $10,00.00 each, subject to the accelerated payment discount option of $53,000.00. The first monthly installment payment of $10,000.00 shall be due 30 (thirty) days after the Effective Date.<br><br>(a) <u>Settlement Agreement</u>. The Plaintiffs' claim, as such claim may be allowed and approved by order of the Court, are the sole claims filed in this class before the Bar Date issued by the Bankruptcy Court.  The Plaintiffs' claims are scheduled as disputed by the Debtors.  The Plaintiffs' claims were originally asserted without a sum certain in the FLSA Suit. Plaintiffs then filed unsupported proofs of claim in these cases totaling a maximum of $2.7 million. The total of the obligation to be paid by the Debtors to the Plaintiffs as of the Effective Date, is the Settlement Amount. Upon the Effective Date, the FLSA Suit will be dismissed with prejudice.<br><br>(b) <u>Full Settlement and Discharge</u>. The treatment and consideration to be received by holders of allowed Class 3 Claims shall, upon due payment under the Plan, be in full settlement and final satisfaction and full discharge of each holder's respective claims against the Debtors, the Debtors' estates and (per the Settlement Agreement) against the Debtors' shareholders who are also named as Defendants in the FLSA Suit.  The discharge issued in this Bankruptcy Case will serve as an injunction against Wage and Hour Claims litigation. |

| Class 3 – Non-priority unsecured creditors (trade creditors) (except those creditors included in Class 2 above) | $112,815.22 | Impaired | Non-priority unsecured trade creditors shall receive prorata the following minimum distribution:<br><br>(a) <u>Treatment</u>: Allowed claims of all Pre-Petition unsecured creditors of the Debtors, subject to an allowance of their claims by the Court, will be paid in cash, an amount equal to **ONE HUNDRED percent (100%)** of the allowed amount of such creditors' claims payable in twelve (12) monthly **installments** commencing thirty (30) days after the Effective Date of the Plan.  The aggregate of the monthly installments shall be approximately $9,401.27. The Debtors reserve the right to accelerate payment, if feasible.<br>(b) The claims in this class total approximately $112,815.22.<br>(c) This class is impaired, and its vote will be solicited. |
| --- | --- | --- | --- |

| Class 4 – Equity security holders of the Debtors | N/A | Unimpaired | On the Effective Date of the Plan, equity in the Debtors will vest in the Pre-Petition equity securityholders in the same proportion as held by each of them immediately prior to the Petition Date, as follows:<br><br>WB Maintenance Inc.:     Jeimy Briceno 50%<br>                                    Jeissy Briceno 50%<br><br>Go-Pro Maintenance Inc.     Jeimy Briceno 50%<br>                                      Jeissy Briceno 50%<br><br>W.B. Maintenance & Repair Corp.<br>                    Jeimy Briceno 40%<br>                    Jeissy Briceno 40%<br>                    Wladimir Briceno 20%<br><br>W.B. & Son Construction Corp.<br>                    Alexander Briceno 100%<br><br>WB Maintenance & Design Group Inc.<br>                    Wladimir Briceno 100% |
| --- | --- | --- | --- |

|    |    |    |    |    |

The non-priority unsecured Wage and Hour Claims are separately classified as Class 3 from trade and supplier creditors in Class 4 because the nature of such claims is different.  The Debtors must quickly repay its trade and supplier creditors to maintain the cooperation and good will of its trade and supplier creditors. This cooperation is important so that each continues supplying the Debtors with products and services so that the consistency of the Debtors' work product and craftsmanship that they provide to their customers remains at the same high standards and quality that its customers expect.  The Wage and Hour Claims claim does not have that urgency. Additionally, the claims asserted in the FLSA Suit are larger than the individual trade and supplier claims, thus requiring a longer multi-year payout.

## Article 5: Allowance and Disallowance of Claims

| 5.01 | **Disputed claim** | A *disputed claim* is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: |
| | | (i)   a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or |
| | | (ii)  no proof of claim has been filed, and the Debtors scheduledsuch claims as disputed, contingent, or unliquidated. |
| 5.02 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. |
| 5.03 | **Settlement of disputed claims** | The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| 6.01 | **Assumed executory contracts and unexpired leases** | (a) The debtor W.B. Maintenance & Repair Corp. assumes the following executory contracts and unexpired leases as of the Effective Date of the Plan, if not already assumed by Order of the Bankruptcy Court: that certain **Real Property Lease.** |

## Article 7: Means for Implementation of the Plan

The Plan shall be funded by ongoing operations of the Debtors from the Effective Date onward and as described and set forth in the financial projections attached hereto as **Exhibit B**. Additionally, the Plan may potentially be funded in part from the sale of non-inventory assets during the 3 years following the Effective Date.

## Article 8: General Provisions

8.01 **Definitions and rules of construction**

The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

**§** or **Section** means section of the Bankruptcy Code

**Administrative Expense** means any claim for payment of costs and expenses of administration pursuant to section 503(b), 507(a)(2), 507(b) and 545(c)(2) of the Bankruptcy Code

**Allowed** with respect to a claim means a claim against any of the the Debtors that (a) has not been disallowed pursuant to a final order and is not presently a disputed claim and (i) with respect to which a proof of claim has been timely filed in this Case, or (ii) if no proof of claim has been filed, that has been or hereafter is listed by the Debtors in their respective schedules as liquidated in amount and not disputed or contingent. Allowed means with reference to any Administrative Expense, an Administrative Expense applied for by motion or application to the Bankruptcy Court, and approved by a final order, unless the Administrative Expense is for goods or non-professional services provided to the Debtors during the Case in the ordinary course of business, in which case no action need be taken for such Administrative Expense to be considered Allowed.

**Bankruptcy Code** means Title 11 of the United States Code, as amended and in effect or hereafter applicable during the pendency of this Case.

**Bankruptcy Court** or **U.S. Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of New York, having jurisdiction over this Case.

**Bankruptcy Rules** means the Federal rules of BankruptcyProcedure in effect or hereafter applicable during the pendency of this Case.

**Bankruptcy Case** or **Bankruptcy Cases** means the chapter 11 cases of the Debtors filed in the United States Bankruptcy Court for the Eastern District of New York, listed as follows:

- WB Maintenance Inc., Case No. 1-22-41755;
- Go-Pro Maintenance Inc., Case No. 1-22-41756;
- W.B. Maintenance & Repair Corp., Case No. 1-22-41757;
- W.B. & Son Construction Corp., Case No. 1-22-41758; and
- W.B. Maintenance & Design Group Inc., Case No. 1-22-41759.

**Bar Date** means the October 14, 2022 deadline for creditors (including holders of Wage and Hour Claims) to file claims in this Bankruptcy Case established by Bankruptcy Court Order dated August 23, 2022, which order provided for notice of the deadline to be provide d by first-class mail and by publication notice in the *New York Daily News* or *New York Post.*

**Confirmation Order** means the order entered by the Bankruptcy Court confirming the Plan under §1129 of the Bankruptcy Code.

**Claim** means any right to (a) payment from any of the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or (b) an equitable remedy for breach of performance if such breach gives rise to a right to payment from any of the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**Debtors** means, the following debtors and debtors-in-possession in these jointly administered Cases.

- WB Maintenance Inc.
- Go-Pro Maintenance Inc.
- W.B. Maintenance & Repair Corp.
- W.B. & Son Construction Corp., and
- W.B. Maintenance & Design Group Inc.

**Defendants** means WB Maintenance & Design Group, Inc., W.B. & Son Construction Corp., Wladimir Briceno, Betty Briceno, Jeissy Briceno, Jeimy Briceno, and Alexander Briceno, individually and collectively the parties named as defendants in the FLSA Suit.

**District Court** or **U.S. District Court** means the United States District Court for the Eastern District of New York.

**Disputed Claim** shall have the meaning provided for in section 5.01 of the Plan.

**Effective Date** shall have the meaning provided for in section 8.02 of the Plan.

**FLSA Suit** means the lawsuit commenced by the Plaintiffs by their filing of the complaint dated September 20, 2021, as amended by the amended complaint dated January 10, 2022, against the Defendants in the action pending in the United States District Court, Eastern District of New York bearing index no: 1:21-cv-5263 (SJB).

**Holder** means any entity that holds a Claim or Interest.

**Interest** means any respective equity interests in the Debtors, including, but not limited to, shares of common stock, any stock rights, options, warrants, calls, subscriptions, or other similar rights, agreements, or commitments or other outstanding agreements obligating any of the Debtors to issue, transfer, or sell any shares of any type of stock of any of the Debtors.

**Petition Date** means July 22, 2022, the date on which the Debtor filed is voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

**Pre-Petition** means a date which occurred before the **Petition Date**

**Plan** means the Debtors' Plan of Reorganization for Small Business Under Subchapter V of Chapter 11, as of the date on the cover page hereof, filed and proposed by the Debtor, as the same may be amended or modified from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules, including all exhibits and schedules hereto.

**Plaintiffs** means Byron Geovanny Arevalo Fajardo, Carlos Martell, Jose Gutierrez, Juan Pereyra, Iñigo Mendoza Ramirez (a/k/a Eduardo Mendoza Ramirez), Miguel Garrido, Reymundo Chavez Hernandez (a/k/a Ramon Chavez Hernandez), Richard Xavier Hernandez, And Sebastian Alfredo Espinosa Vargas (a/k/a Sebby Espinosa Vargas), Jairo Rivas, Elias Ordones, and George Palta, individually and collectively the parties named as plaintiffs in the FLSA Suit.

**Professional Fees** means the fees and expenses of any person/entity employed pursuant to a Bankruptcy Court order in accordance with §§ 327 or 1103 of the Bankruptcy Code and to be compensated pursuant to §§ 327-331 of the Bankruptcy Code or awarded compensation and reimbursement by the Bankruptcy Court pursuant

to § 503(b)(4) of the Bankruptcy Code.

**Lease or Real Property Lease** means the unexpired lease dated as of July 1, 2021 for the nonresidential real property warehouse location knows as 3823 54th Street, Woodside, New York and any and all modifications, amendments, addenda and/or supplements thereto and/or restatements thereof and/or any ancillary documents or agreements related thereto, for the term July 1, 2021 to June 30, 2028 with Core Empire Corp., landlord.

**Subchapter V Trustee** means Salvatore LaMonica, the individual appointed as the subchapter V trustee in this Case.

**Wage and Hour Claims** shall have the meaning provided for in section 2.3 of the Plan.

| | | |
|---|---|---|
| 8.02 | **Effective Date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the Confirmation Order. If, however, a stay of the Confirmation Order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| | | The Debtors are to file with the Court a notice of the Plan's Effective Date within three (3) business days of the occurrence of the Effective Date. Additionally, the Debtors are to file with the Court a notice of the plan's substantial consummation within three (3) business days of the substantial consummation and seek a final decree in this case. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |

| 8.06 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |

## Article 9: Discharge

The Debtors are corporations proceeding under Subchapter V of Chapter 11 of the Bankruptcy Code.

If the Debtors' Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtors will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtors will not be discharged of any debt:

(i) imposed by this Plan; or
(ii) to the extent provided in § 1141(d)(6).

If the Debtors' Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code.

The Debtors will not be discharged from any debt:

(i)   on which the last payment is due after the first 3 years of the Plan, or as otherwise provided in § 1192; or
(ii)   exception from discharge under § 523(a) of the Bankruptcy Code, except as provided in Rule4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtors' Plan is confirmed under § 1191(a) or (b), the Debtors' principals and shareholders and other individuals Wladimir Briceno, Betty Briceno, Jeissy Briceno, Jeimy Briceno, and Alexander Briceno, and each of them, will, pursuant to the terms of the Settlement Agreement be discharged from any debt asserted in the FLSA Suit and/or held by the Plaintiffs, including Wage and Hour Claims, that arose before confirmation of this Plan, as provided for in the Settlement Agreement.  Any discharge issued in this Bankruptcy Case will serve as an injunction against litigation to enforce Wage and Hour Claims.

Additionally, pursuant to Local Bankruptcy Rule 3021(b) of the Eastern District of New York ("EDNY LBR"), Debtors shall file with the Court a report every six months after the entry of the Confirmation Order identifying actions taken to achieve substantial consummation and seek a final decree in this case.

Upon confirmation of this plan, Debtors shall not make any material modifications absent notice and a hearing.

**Article 10: Other Provisions**

10.01 **Vesting of Assets**.  Except as otherwise provided in this Plan or § 1186 of the Bankruptcy Code, all Assets,including property listed in the Schedules and not surrendered previously by the Debtors or otherwise provided for herein, of the Estate shall vest in the Debtors as of the Effective Date. On and after the Effective Date, the Debtors may use, acquire, and dispose of Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or Confirmation Order. Without limiting the foregoing, the Debtors may pay the charges that they incur on or after the Effective Date for professionals' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

10.02 **Post-Confirmation Officers and Managers**. The officers and managers of the Debtors as of the Petition Date shall remain the same officers and managers of the Debtors post-confirmation, specifically being Jeimy Briceno. Such officers and managers shall serve in accordance with applicable non-bankruptcy law. The rules and procedures of corporate governance of the Debtors post-confirmation shall be exactly the same as it was immediately prior to the Petition Date. The projected six month financial budget attached to the Plan as **Exhibit B** does not include a salary for Jeimy Briceno of [$4,000.00] weekly.

10.03  **Scope of Jurisdiction.** Following the Effective Date, the Bankruptcy Court shall retain jurisdiction over this Case to the extent legally permissible, including without limitation such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without in any way limiting the scope of the Bankruptcy Court's retention of jurisdiction over this Case, the Bankruptcy Court shall retain jurisdiction for the following specific purposes:

(a)  The Bankruptcy Court shall retain jurisdiction (i) to classify, resolve objections to, and determine or estimate pursuant to § 502(c) of the Bankruptcy Code all claims against and interests in the Debtors and (ii) to adjudicate and enforce all claims and causes of action owned by the Debtor;

(b) To decide and resolve all matters relating to the granting and denying, in whole or in part, any application for allowance of compensation or reimbursement of expenses to professionals authorized pursuant to the Bankruptcy Code or the Plan through the Effective Date;

(c)  To adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(d) To adjudicate, decide, or resolve any and all matters related to causes of action;

(e) To enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan;

(f) To resolve any case, controversy, suit, dispute, or cause of action that may arise in connection with consummation, interpretation, or enforcement of the Plan;

(g) To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to refrain interference by any entity with consummation or

enforcement of the Plan;

(h) To determine any other matters that may arise in connection with or relate to the Plan, or the Confirmation Order;

(i) To consider any modifications of the Plan;

(j) To hear all matters not inconsistent with the Bankruptcy Code

(k) To enter an order concluding or closing the Case; and

(l) To enforce any injunction or release provisions set forth in the Plan.

**10.04 Payments Pursuant to the Plan.** The Debtors shall be responsible for making all payments required under the Plan, unless the Plan is confirmed under § 1191(b) of the Bankruptcy Cody, in which case payments shall be made in accordance with § 1194 of the Bankruptcy Code.

**10.05 No interference.** No person or entity will be permitted to commence or continue any action or proceeding or perform any act to interfere with the implementation and consummation of the Plan or the payments required to be made hereunder.

**10.06 Injunction.** Except as otherwise provided in the Plan to the contrary, confirmation of the Plan shall serve to satisfy all Claims addressed by the terms of the Plan and will operate as an injunction against the commencement or continuation of an action, or an act to collect or recover from, or offset against, property of the Debtor, *including an action to enforce a Wage and Hour Claim*, except as provided in the Plan.

**10.07 Exculpation.** In consideration of the distributions under this Plan, upon the Effective Date, each Holder of a Claim or Interest will be deemed to have released the Debtors, Koutsoudakis & Iakovou Law Group PLLC, (i.e., Debtors' bankruptcy counsel), GJM Business Center, Inc., the Subchapter V Trustee, in their capacity as such, and each of their directors, officers, agents, attorneys, independent accountants, advisors, financial advisors, investment bankers and employees (as applicable), employed from and after the Petition Date from any and all claims, rights, causes of action, actions, suits, rights to payment whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise (other than the right to enforce the Reorganized Debtors' obligations under this Plan and the right to pursue a claim based on any gross negligence or willful misconduct, including any breach of fiduciary duty constituting gross negligence or willful misconduct) arising out of actions or omissions during the administration of the Debtors' estate or the distribution of any Property pursuant to this Plan.

**10.08 Withdrawal of the Plan.** The Debtors reserves the right to revoke or withdraw the Plan at any time before entry of a Confirmation Order. If the Debtors withdraw the Plan prior to entry of the Confirmation Order, then the Plan shall be null and void as to the Estate.

**10.09 Successors and Assigns**. The rights, benefits, and obligations of any person or entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such person or entity.

10.10  **Closing of the Case**. In accordance with EDNY LBR 3022-1, within 14 days following the full administration of the estate, but not later than 18 months following the entry of the order confirming a plan, the Debtors shall file on notice to the United States Trustee, an application and a proposed order for a final decree.

10.10  **Further Actions**. The Debtors shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan.

Dated: October 19, 2022                    Respectfully submitted,

                                           WB Maintenance Inc.
                                           Go-Pro Maintenance Inc.
                                           W.B. Maintenance & Repair Corp.
                                           W.B. & Son Construction Corp., and
                                           W.B. Maintenance & Design Group Inc.

                                           By: _____
                                                Jeimy Briceno, Chief Restructuring Officer

                                           and

                                           KOUTSOUDAKIS & IAKOVOU LAW GROUP PLLC
                                           Counsel for the Debtors

                                           By: _____
                                                Ralph E. Preite, Esq.
                                           40 Wall Street, 49th floor
                                           New York, New York 10005
                                           Direct: (212) 404-8608
                                           Email: ralph@kilegal.com

# Exhibit A

Liquidation Analysis of Each Debtor

**EXHIBIT A-1**

**W.B. MAINTENANCE INC.**
**LIQUIDATION ANALYSIS**

| ASSETS | |
|---|---|
| Cash and Cash Equivalents | $00.00 |
| Accounts Receivable (collectible) Including Promissory Note | $00.00 |
| Inventory and/or Supplies | $00.00 |
| Office Furniture & Furnishings | $00.00 |
| Office Equipment | $00.00 |
| Leasehold interest | $00.00 |
| Intangibles – good will, intellectual property including trade name, trademark,website, customer list | $00.00 |
| **Total Assets at Liquidation Value** | $00.00 |
| | |
| **LESS** | |
| Secured Claims | $00.00 |
| Chapter 11 Administrative Expenses | (estimate) $100,000.00 divided by 5 = $20,000.00 per Debtor |
| Priority Tax Claims | $00.00 |
| **Total Superior Claims to General Unsecured Creditors** | $00.00 |
| **Total General Unsecured Claims** | Approximately $23,424.54 |
| **Total Lease assumption Claims** | $00.00 |
| **Fraudulent Conveyance/Preference Recoveries** | $00.00 |
| **Total FLSA Claims** | $00.00 |
| (1) Funds available to General Unsecured Creditors | $00.00 |
| (2) Minimum payments to General Unsecured Creditors under Plan | $00.00 |
| **Projected minimum percentage payment to General Unsecured, Secured, and Priority Creditors** | Approximately 100% minimum |

**EXHIBIT A-2**

**GO-PRO MAINTENANCE INC.**
**LIQUIDATION ANALYSIS**

| ASSETS | |
|---|---|
| Cash and Cash Equivalents | (estimate) $400,000.00 |
| Accounts Receivable (collectible) Including Promissory Note | (estimate) $52,000.00 |
| Inventory and/or Supplies | $00.00 |
| Machinery, Vehicles & Construction Equipment | $10,500.00 |
| Office Equipment | $6,400.00 |
| Leasehold interest | $00.00 |
| Intangibles – good will, intellectual property including trade name, trademark,website, customer list | $00.00 |
| **Total Assets at Liquidation Value** | $468,900.00 |
| | |
| **LESS** | |
| Secured Claims | $00.00 |
| Chapter 11 Administrative Expenses | (estimate) $100,000.00 divided by 5 = $20,000.00 per Debtor |
| Priority Tax Claims | $00.00 |
| **Total Superior Claims to General Unsecured Creditors** | $00.00 |
| **Total General Unsecured Claims** | Approximately $67,014.17 |
| **Total Lease assumption Claims** | |
| **Fraudulent Conveyance/Preference Recoveries** | $00.00 |
| **Total FLSA Claims** | (proposed settlement amount of approx. $2.7 million filed & disputed FLSA claims $530,000.00/2) **$265,000.00** |
| (1) Funds available to General Unsecured Creditors | (estimate) $642,815.22 |
| (2) Minimum payments to General Unsecured Creditors under Plan | (estimate) $642,815.22 |
| **Projected minimum percentage payment to General Unsecured, Secured, and Priority Creditors** | Approximately 100% minimum |

**EXHIBIT A-3**
**W.B. MAINTENANCE & REPAIR**
**CORP. LIQUIDATION ANALYSIS**

| ASSETS | |
|---|---|
| Cash and Cash Equivalents | (estimate) $20,000.00 |
| Accounts Receivable (collectible) Including Promissory Note | (estimate) $62,679.00 |
| Inventory and/or Supplies | $00.00 |
| Machinery, Vehicles, & Construction Equipment | $21,000.00 |
| Office Equipment | $7,700.00 |
| Leasehold interest | $6,500.00/month in rent |
| Intangibles – good will, intellectual property including trade name, trademark,website, customer list | $00.00 |
| **Total Assets at Liquidation Value** | $111,379.00 |
| | |
| **LESS** | |
| Secured Claims | $00.00 |
| Chapter 11 Administrative Expenses | (estimate) $100,000.00 divided by 5 = $20,000.00 per Debtor |
| Priority Tax Claims | $5,109.31 |
| **Total Superior Claims to General Unsecured Creditors** | $00.00 |
| **Total General Unsecured Claims** | Approximately $16,178.00 |
| **Total Lease assumption Claims** | $00.00 |
| **Fraudulent Conveyance/Preference Recoveries** | $00.00 |
| **Total FLSA Claims** | (proposed settlement amount of approx. $2.7 million filed & disputed FLSA claims $530,000.00/2) **$265,000.00** |
| (1) Funds available to General Unsecured Creditors | (estimate) $642,815.22 |
| (2) Minimum payments to General Unsecured Creditors under Plan | (estimate) $642,815.22 |
| **Projected minimum percentage payment to General Unsecured, Secured, and Priority Creditors** | Approximately 100% minimum |

**EXHIBIT A-4**

**W.B. & SON CONSTRUCTION CORP.**
**<u>LIQUIDATION ANALYSIS</u>**

| ASSETS | |
|---|---|
| Cash and Cash Equivalents | $00.00 |
| Accounts Receivable (collectible) Including Promissory Note | $00.00 |
| Inventory and/or Supplies | $00.00 |
| Office Furniture & Furnishings | $00.00 |
| Office Equipment | $00.00 |
| Leasehold interest | $00.00 |
| Intangibles – good will, intellectual property including trade name, trademark,website, customer list | $00.00 |
| **Total Assets at Liquidation Value** | $00.00 |
| | |
| **LESS** | |
| Secured Claims | $00.00 |
| Chapter 11 Administrative Expenses | (estimate) $100,000.00 divided by 5 = $20,000.00 per Debtor |
| Priority Tax Claims | $00.00 |
| **Total Superior Claims to General Unsecured Creditors** | $00.00 |
| **Total General Unsecured Claims** | $00.00 |
| **Total Lease assumption Claims** | $00.00 |
| **Fraudulent Conveyance/Preference Recoveries** | $00.00 |
| **Total FLSA Claims** | $00.00 |
| (1) Funds available to General Unsecured Creditors | $00.00 |
| (2) Minimum payments to General Unsecured Creditors under Plan | $00.00 |
| **Projected minimum percentage payment to General Unsecured, Secured, and Priority Creditors** | Approximately 100% minimum |

**EXHIBIT A-5**
**WB MAINTENANCE & DESIGN**
**GROUP, INC.**
<u>**LIQUIDATION ANALYSIS**</u>

| ASSETS | |
|---|---|
| Cash and Cash Equivalents | $00.00 |
| Accounts Receivable (collectible) Including Promissory Note | $00.00 |
| Inventory and/or Supplies | $00.00 |
| Office Furniture & Furnishings | $00.00 |
| Office Equipment | $00.00 |
| Leasehold interest | $00.00 |
| Intangibles – good will, intellectual property including trade name, trademark,website, customer list | $00.00 |
| **Total Assets at Liquidation Value** | $00.00 |
| | |
| **LESS** | |
| Secured Claims | $00.00 |
| Chapter 11 Administrative Expenses | (estimate) $100,000.00 divided by 5 = $20,000.00 per Debtor |
| Priority Tax Claims | $00.00 |
| **Total Superior Claims to General Unsecured Creditors** | $00.00 |
| **Total General Unsecured Claims** | Approximately $3,901.61 |
| **Total Lease assumption Claims** | $00.00 |
| **Fraudulent Conveyance/Preference Recoveries** | $00.00 |
| **Total FLSA Claims** | $00.00 |
| (1) Funds available to General Unsecured Creditors | $00.00 |
| (2) Minimum payments to General Unsecured Creditors under Plan | $00.00 |
| **Projected minimum percentage payment to General Unsecured, Secured, and Priority Creditors** | Approximately 100% minimum |

# Exhibit B

Budget Projection

**Exhibit B - Projection**

| **W.B. Maintenance & Repair Corp** | | **6 Month Projection** | |
|---|---|---|---|
| Income: | Cash receipts: | 300,000.00 | |
| | | | |
| Expenses: | ADP Payroll | 55,800.00 | |
| | ADP Payroll Taxes | 30,600.00 | |
| | Amex Payment | 2,700.00 | |
| | Rent | 39,000.00 | |
| | EZ Pass | 3,000.00 | |
| | Lovell WC | 1,800.00 | |
| | NYS Sales Tax | 19,800.00 | |
| | PC Richards | 37,800.00 | |
| | Premins - Liability | 15,000.00 | |
| | Progessive Insurance | 12,000.00 | |
| | Verizon | 900.00 | |
| | Verizon Wireless | <u>3,600.00</u> | |
| Total Expenses: | | 222,000.00 | |
| | | | |
| Net Cash Flow: | | 78,000.00 | 78,000.00 |

| **Go-Pro Maintenance Inc** | | | |
|---|---|---|---|
| Income: | Cash receipts: | 450,000.00 | |
| | | | |
| Expenses: | Pay: | 120,000.00 | |
| | AKI Stones LLC | 4,800.00 | |
| | AKI Stones LLC | 3,000.00 | |
| | Kazalas Paint Supplies Inc | 10,200.00 | |
| | Metalline Fire Door Co. | 1,020.00 | |
| | Pie Insurance | 10,800.00 | |
| | Verizon - Connect | <u>180.00</u> | |
| Total Expenses: | | 150,000.00 | |
| | | | |
| Net Cash Flow: | | 300,000.00 | <u>300,000.00</u> |
| | | | |
| **Total Net Cash Flow:** | | | **378,000.00** |